UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

WILLIE HUDSON KELLAM,

        Plaintiff,

v.

GARY HEMBREE, NEIL DENNIS, SCOTT
KENDRICK, DONALD GRACEY, PONTIAC CITY
POLICE DEPARTMENT, and CITY OF PONTIAC,

        Defendants.

Case No. 11-14310
Honorable Julian Abele Cook, Jr.

ORDER

In this civil lawsuit, the Plaintiff, Willie Hudson Kellam, alleges that the Defendants [1] violated federal and state laws by applying excessive force while attempting arrest him. The Defendants have now moved for the entry of a summary judgment pursuant to Federal Rules of Civil Procedure 56.

I.

On July 13, 2011 around 6:00 p.m., Officers Dennis and Hembree were dispatched to 268 North Johnson Street in Pontiac, Michigan in response to a 911 call. The caller reported that she had just been improperly chased into her home by a man who arguably remained in the area as a

---

[1] The Plaintiff, Willie Hudson Kellam, has identified the Defendants as (1) the Pontiac, Michigan Police Department, (2) the City of Pontiac, Michigan, and (3) the following law enforcement officers with the Department of Police in Pontiac, Michigan; namely, Gary Hembree, Neil Dennis, Scott Kendrick and Donald Gracey. The Pontiac Police Department and the City of Pontiac were dismissed as Defendants in this case by stipulation of the parties on July 23, 2013 (ECF No. 18).

continuing threat to her personal safety. When the law enforcement officers arrived at her home, she gave them a description of Kellam after reporting that he was last seen driving a dark, greenish-blue Ford Crown Victoria automobile. By using a computer software, commonly known as "Picture-Link," these officers were able to view Kellam's photograph. They were also informed by a fellow police officer (a non-party to this litigation) that Kellam was wanted by law enforcement authorities for questioning in connection with an unrelated criminal matter.

At approximately 8:40 p.m., the officers were en route to the site of a shooting when they observed a Ford Crown Victoria that appeared to match the description provided for Kellam's vehicle. As the vehicle approached in the opposite lane of traffic, the officers were able to identify the driver as Kellam. They made a U-turn with the intention of conducting a traffic stop when Kellam ran from his car and the officers pursued him on foot. Hembree asserts that during his pursuit, he believed that he saw Kellam reach for his waistband and pull out what may have been a small handgun.

According to Hembree, when he found Kellam lying in the grass behind a house, he ordered Kellam to remove his hands from under his body. Rather than complying, Kellam allegedly tried to stand up, at which point Hembree grabbed him in an attempt to prevent him from rising. During the struggle, Hembree determined that he was unable to restrain Kellam without the use of additional force, at which point he struck Kellam in the face with his fist. The blow provided Hembree the opportunity to apply handcuffs. Neither party disputes the fact that Hembree sustained a fractured right hand as a result of punching Kellam. Hembree maintains that the encounter ended once the handcuffs were placed on Kellam.

Kellam presents an altogether different story of this encounter. He submits that he was on

his knees, and when approached by Hembree, he immediately raised his hands in submission. According to Kellam, Hembree then forced him to the ground and, along with the other Defendants, began punching and kneeing his face and body while using repeated racial epithets, including the phrase, "nigger get down." Kellam alleges that this beating continued after he had been handcuffed and was unable to shield his face. He also alleges that after he was handcuffed, Hembree kicked him in the mouth and said that he hoped he had kicked Kellam's teeth out. Kellam maintains that at this point he passed out and woke up in a police car on the way to the hospital. He has produced affidavits from two witnesses which support his contention that he (1) did not offer resistance and (2) was beaten by multiple police officers while he was handcuffed.

Kellam was arrested and charged with (1) two felony counts of fleeing and eluding; (2) one felony count of assaulting - resisting a police officer; and (3) one count of driving with a suspended license. On October 3, 2011, he entered a plea of no contest to every charge except for one count of fleeing and eluding. This lawsuit followed.

II.

The purpose of the summary judgment rule, as reflected by Federal Rule of Civil Procedure 56, "is to isolate and dispose of factually unsupportable claims or defenses . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The entry of a summary judgment is proper only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' for purposes of summary judgment if proof of that fact would have the effect of establishing or refuting an essential element of the cause of action or a defense advanced by the parties." *Aqua Grp., LLC v. Fed. Ins. Co.*, 620 F. Supp. 2d 816, 819 (E.D. Mich. 2009) (citing *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.

1984)). In order for a dispute to be genuine, it must contain evidence upon which a trier of the facts could find in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 560 (6th Cir. 2004). When assessing a request for the entry of a summary judgment, a court "must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party." *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987). The entry of a summary judgment is appropriate if the nonmoving party fails to present evidence which is "sufficient to establish the existence of an element essential to its case, and on which it will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Thus, the moving party has the initial obligation of identifying those portions of the record that demonstrate the absence of any genuine issue of a material fact. *Celotex*, 477 U.S. at 323. Thereafter, the nonmoving party must "come forward with some probative evidence to support its claim and make it necessary to resolve the differences at trial." *Boyd v. Ford Motor Co.*, 948 F.2d 283, 285 (6th Cir. 1991); see also Anderson, 477 U.S. at 256. The presence or the absence of a genuinely disputed material fact must be established by (1) a specific reference to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or (2) a "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

### III.

In his complaint, Kellam submits that the Defendants (1) violated his fundamental rights

4

under the Fourth, Eighth, and Fourteenth Amendments to the United States Constitution; (2) committed unjustified acts of assault and battery upon him; and (3) caused him to suffer intentional inflictions of emotional distress.

In their motion, the Defendants contend that awards of summary judgments in their favor would be appropriate under the circumstances of this case because (1) Kellam has not adequately stated his Eighth and Fourteenth Amendment claims; and (2) each of them are entitled to (a) the protections of qualified immunity as they relate to Kellam's Fourth Amendment claims and (b) governmental immunity as it is applied to his state law claims.

A.   Constitutional Claims and Qualified Immunity

Kellam has raised his constitutional claims against these Defendants pursuant to 42 U.S.C. § 1983. In order to survive a summary judgment, he "must demonstrate a genuine issue of material fact as to the following two elements: (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) the deprivation was caused by a person acting under color of state law." *Miller v. Calhoun County*, 408 F.3d 803, 812 (6th Cir. 2005) (internal quotation marks omitted).

An excessive force claim which arises during an arrest or investigatory stop is analyzed under the reasonableness inquiry of the Fourth Amendment. *Graham v. Connor,* 490 U.S. 386, 394 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985). An examination of Kellam's pleadings seemingly suggests that (1) the thrust of his claim against these Defendants incorporates Fourth Amendment issues, and (2) he has abandoned his accusations under the umbrellas of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. As a result, the Court will only consider Kellam's Fourth Amendment claim.

"To hold an officer liable for the use of excessive force, a plaintiff must prove that the officer '(1) actively participated in the use of excessive force, (2) supervised the officer who used excessive force, or (3) owed the victim a duty of protection against the use of excessive force.'"*Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). "To establish liability against an individual defendant acting under color of state law, a plaintiff must show that the defendant was 'personally involved' in the use of excessive force." *Burley v. Gagacki*, 729 F.3d 610, 619 (6th Cir. 2013). "As a general rule, mere presence at the scene . . ., without a showing of direct responsibility for the action, will not subject [him] to liability." *Ghandi v. Police Dep't of the City of Detroit*, 747 F.2d 338, 352 (6th Cir. 1984). An excessive force claim which arises during an arrest or investigatory stop should be analyzed under the reasonableness inquiry of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7-22 (1985).

1.  Claims against Hembree

Although it is undisputed that Hembree used force against Kellam during his arrest, the issue in dispute is whether the force used by him was excessive. The Defendants contend that this officer is entitled to qualified immunity on this issue. When considering whether a Defendant is entitled to qualified immunity, the Court must determine if the Plaintiff has established (1) a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). These two prongs may be considered in any order. *Id*. at 241.

Here, Kellam points to a violation by Hembree of his Fourth Amendment right to be free from unreasonable seizure. An analysis of the reasonableness of a seizure should be made in

consideration of the totality of the facts and circumstances of the case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

Hembree contends that, given the circumstances of the arrest, his use of force was reasonable for several reasons. First, Kellam was sought for questioning regarding another criminal offense (i.e., attempted murder). Given the severity of the other crime, Hembree asserts that his use of force was reasonable. Moreover, Hembree maintains that Kellam continually tried to get to his feet to flee and refused to submit to being placed in handcuffs. Hembree asserts that he punched Kellam in the face only after concluding that he would attempt to flee the scene.

Notwithstanding Hembree's contentions, the Court cannot conclude that as a matter of law Hembree is entitled to qualified immunity. Kellam testified in his deposition that as soon as he was discovered by Hembree, he submissively displayed his hands and was compliant with the directives by this law enforcement officer. Kellam complains that, notwithstanding his compliance, Hembree repeatedly struck him in the body and face, even after he had been handcuffed. He also stated in his deposition that after he had been handcuffed, Hembree delivered a final kick to his face and told him that he had hoped that the blow would knock his teeth out.

Kellam has produced the affidavits of two witnesses, both of whom support his version of his conflict with Hembree. Both witnesses assert that Kellam did not resist the officers during the "arrest" episode. More specifically, Frankie Hutchison, Jr., in his affidavit, states that the Defendants approached Kellam while he was on his knees with his hands raised. Moreover, Hutchison proffers that Kellam was struck while he was being held down, after being handcuffed and rendered

defenseless. Thus, a material question of fact exists as to whether Hembree's use of force was reasonable. Kellam's version of the facts present a fully compliant criminal suspect who is beaten after he was pinned to the ground and handcuffed. The Sixth Circuit has consistently held that blows to the face and body of a restrained suspect who is no longer a threat to the officers represent an unreasonable use of force. See, e.g., *Harris v. City of Circleville*, 583 F.3d 356, 366-67 (6th Cir. 2009); *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 902-03 (6th Cir. 2004); *Phelps v. Coy*, 286 F.3d 295, 301-02 (6th Cir. 2002).

The constitutional right at issue here is the right to be free from harm while not resisting the police. This right had been clearly established for many years prior to Kellam's conflict with the Defendants. See, e.g., *Eldridge v. City of Warren*, No. 12-1500, 2013 WL 3968761, at *6 (6th Cir. Aug. 5, 2013); *Kijowski v. City of Niles*, 372 F. App'x 595, 601 (6th Cir. 2010).

The Defendants' motion for summary judgment is denied as it pertains to Hembree.

*2.*     Claims against Dennis, Kendrick and Gracey

Kellam contends that Dennis, Kendrick, and Gracey violated his Fourth Amendment rights because (1) they collectively participated in their assault upon him, or (2) should have acted in such a manner that would have prevented the assault upon him. In response, the Defendants submit that Kellam's constitutional claims against them should be dismissed because, in their collective opinion, he cannot offer any competent evidence which would establish that they were present when the alleged assault was inflicted upon him.

The Sixth Circuit has declared that "'[a] police officer who fails to act to prevent the use of excessive force may still be held liable where '(1) [he] observed or had reason to know that excessive force would be or was being used, and (2) [he] had both the opportunity and the means

8

to prevent the harm from occurring.'" *Burley*, 729 F.3d at 620 (quoting *Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008)).

Here, Kellam has failed to produce a sufficiency of evidence that would enable a trier of the facts to identify those persons who were present at the time of the claimed assault upon him. The police report proffered by Kellam establishes only that Dennis, Kendrickson, and Gracey were present at the scene of the incident at some time after the alleged assault. According to this report, they joined Hembree in searching the surrounding grass for a weapon after Kellam had been temporarily restrained. Significantly, this report does not mention when these officers joined Hembree in his search for the "missing" weapon or whether they observed the alleged beating.

The affidavits offered by Kellam also fail to indicate when these Defendants arrived on the scene. The affidavit of Louis Caceres merely states that multiple unidentified officers beat Kellam. The affidavit of Frank Hutchison, Jr. asserts that three law enforcement officers were initially on the scene, all of whom were later joined by six other officers at the site of the alleged assault. Furthermore, the affidavit does not identify the three officers who were on the scene at the time of the alleged beating. In summary, this report does not provide any additional information that would permit the jury to determine if Dennis, Kendrickson, and/or Gracey were present at any time when Kellam was allegedly assaulted.

When a plaintiff cannot establish whether a particular officer was present during alleged police misconduct, the Sixth Circuit has entered summary judgment for the Defendants. See, e.g., *Totman v. Louisville Jefferson Cnty. Metro Gov't*, 391 F. App'x. 454, 464–65 (6th Cir. 2010) (unpublished); *Combs v. Wilkinson,* 315 F.3d 548, 557–58 (6th Cir. 2002); *Thornton v. Spooner*, 872 F.2d 1029, 1989 WL 34026, at *2 (6th Cir. 1989) (unpublished). Although the Sixth Circuit has

9

denied summary judgment in some cases where a plaintiff was unable to identify if a particular officer committed the disputed misconduct, those plaintiffs were able to offer evidence that all of the defendant law enforcement officers were present at the time of the alleged misconduct. *See, e.g.*, *Pershell v. Cook,* 430 F. App'x 410, 416 (6th Cir. 2011). Here, Kellam is unable to establish that these specific Defendants were present and in a position to intervene at the time of the beating. As a result, the Defendants' motion will be granted as it pertains to the Fourth Amendment claims against Dennis, Kendrick, and Gracey. *See Burley*, 729 F.3d at 620 ("Because no evidence places the . . . defendants inside plaintiffs' home at the appropriate time to witness or respond to any unconstitutional conduct that may have occurred, the district court properly granted their motion for summary judgment.").

B. State Law Claims and Governmental Immunity

The Defendants contend that they are entitled to governmental immunity with regard to Kellam's state law tort claims. In making this argument, they point to the law in Michigan wherein a government employee is immune from liability for intentional torts if the following elements are established; to wit, (1) the relevant acts were undertaken during the course of his employment, (2) the employee was acting, or reasonably believed he was acting within the scope of his authority; (3) the acts were undertaken in good faith, or were not undertaken with malice; and (4) the challenged acts were discretionary, rather than ministerial, in nature. *Odom v. Wayne Cnty.*, 760 N.W.2d 217, 228 (Mich. 2008). It is worth noting that an officer does not act in good faith if he acts "maliciously, or for an improper purpose," id. at 224, or "with a wanton or reckless disregard of the rights of another," id. at 225.

Kellam does not challenge the Defendants' assertions that (1) they were acting within the

scope of their employment and (2) the challenged acts were discretionary in nature. Rather, he argues that the Defendants' actions were undertaken with malice and not in good faith. On the basis of this argument, the Court will focus its analysis on the second *Odom* factor.

According to Kellam, and an independent witness, Frankie Hutchison, Jr., the arresting officers - of whom it is undisputed that Hembree was one - repeatedly uttered racial epithets during all of the times that are relevant to this litigation. But more importantly, Kellam testified that after he was handcuffed and lying on the ground, Hembree told him to get up and after he had risen to his knees, kicked him in the mouth, saying "I hope I kick your [expletive excluded] teeth out." Kellam Dep. 70:12-17. These actions are clear evidence of malice, and Hembree's request for governmental immunity must be denied.

### 2. Hendrickson, Dennis, and Grace

Kellam's claims against Hendrickson, Dennis, and Grace must fail because he cannot prove that they engaged in any tortious conduct. In his complaint, Kellam raised claims of (1) assault and battery, and (2) an intentional infliction of emotional distress. Under Michigan law, in order to establish these claims, a plaintiff must offer evidence that the defendant committed an intentional act. See *Mitchell v. Daly*, 350 N.W.2d 772, 779 (Mich. Ct. App. 1984) (assault and battery); *Roberts v. Auto-Owners Ins. Co.*, 374 N.W.2d 905, 908 (Mich. 1985) (intentional infliction of emotional distress). As discussed above, Kellam is unable to establish that any of these Defendants - with the exception of Hembree - was present at the time of the alleged beating. As a result, he cannot prove that they committed any intentional acts against him. The state law claims against Hendrickson, Dennis, and Grace must be dismissed.

### IV.

For the reasons that have been set forth above, the Court denies the Defendants' motion for summary judgment (ECF No. 14) with respect to Hembree and grants their request for relief as it applies to Dennis, Kendrick, and Gracey.

IT IS SO ORDERED.

Date: March 31, 2014              s/Julian Abele Cook, Jr.
                                  JULIAN ABELE COOK, JR.
                                  U.S. District Judge

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on March 31, 2014

                                  s/ Kay Doaks
                                  Case Manager